GREAT–WEST LIFE & ANNUITY
INSURANCE CO., Plaintiff,

v.

Randall BROWN, Defendant.

No. 7:01–CV–40 (CAR).

United States District Court,
M.D. Georgia,
Valdosta Division.

March 22, 2002.

Thomas H. Lawrence, Elizabeth Thompson, for Plaintiff.

John Reid Bennett, for Defendant.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROYAL, District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment [Tab 6] in this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461 ("ERISA"). Plaintiff seeks restitution of $20,136.30 paid out in medical benefits. After reviewing the parties' briefs and relevant case law, the Court **GRANTS** Plaintiff's Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was, at all relevant times, a covered person in the Chapparral Boats Employee Benefit Plan ("the Plan"). On December 20, 1999, Defendant was injured in a hit-and-run accident. As a result of injuries sustained in that accident, Defendant recovered approximately $40,000 from other parties, including the third parties who caused his injuries and his underinsured motorist carrier. Of that amount, Plaintiff paid one-third in attorney's fees, plus the cost of the action.

In connection with the injuries alleged in that claim, the Plan paid medical benefits on behalf of Defendant. The Plan contains a provision for subrogation and right of recovery, which states as follows:

PROVISION FOR SUBROGATION AND RIGHT OF RECOVERY

An Other Party may be liable or legally responsible to pay expenses, compensation and/or damages in relation to an Illness, a sickness, or a bodily injury incurred by you or one of your covered Dependents (a "covered person").

An Other Party is defined to include, but is not limited to, any of the following:

- the party or parties who caused the Illness, sickness or bodily injury;
- the insurer or other indemnifier of the party or parties who caused the Illness, sickness or bodily injury;
- a guarantor of the party or parties who caused the Illness, sickness or bodily injury;
- the covered person's own insurer (for example, in the case of uninsured, underinsured, medical payments or no-fault coverage);
- a worker's compensation insurer;
- any other person, entity, policy or plan that is liable or legally responsible in relation to the Illness, sickness or bodily injury.

Benefits may also be payable under this Plan in relation to the Illness, sickness or bodily injury. When this happens, Great–West may, at its option:

- subrogate, that is, take over the covered person's right to receive payments from the Other Party. The covered person or his or her legal representative will transfer to Great West any rights he or she may have to take legal action arising from the Illness, sickness or bodily injury to recover any sums paid under the Plan on behalf of the covered person.
- recover from the covered person or his or her legal representative any benefits paid under the Plan from any payment the covered person is entitled to receive from the Other Party.

The covered person or his or her legal representative must cooperate fully with Great–West in asserting its subrogation and recovery rights. The covered person or his or her legal representative will, upon request from Great–West, provide all information and sign and return all documents necessary to exercise Great–West's rights under this provision.

Great–West will have a first lien upon any recovery, whether by settlement, judgment, mediation or arbitration, that the covered person receives or is entitled to receive from any of the sources listed above. This lien will not exceed:

- the amount of benefits paid by Great–West for the Illness, sickness or bodily injury plus the amount of all future benefits which may become payable under the Plan which result from the Illness, sickness or bodily injury. Great–West will have the right to offset or recover such future benefits from the amount received from the Other Party; or

- the amount recovered from the Other Party.

If the covered person or his or her legal representative:

- makes any recovery from any of the sources described above; and

- fails to reimburse Great–West for any benefits which arise from the Illness, sickness or bodily injury;

then:

- the covered person or his or her legal representative will be personally liable to Great–West for the amount of the benefits paid under this Plan; and

- Great–West may reduce future benefits payable under this Plan for any Illness, sickness or bodily injury by the payment that the covered person or his or her legal representative has received from the Other Party.

- Great–West's first lien rights will not be reduced due to the covered person's own negligence; or due to the covered person not being made whole; or due to attorney's fees and costs.

For clarification, this provision for subrogation and right of recovery applies to any funds recovered from the Other Party by or on behalf of:

- your minor covered Dependent;

- the estate of any covered person; or

- on behalf of any incapacitated person.

Based on these provisions, Plaintiff requested Defendant reimburse it in the amount of $20,136.30, the amount Plaintiff paid in medical benefits.

Defendant honored all of Plaintiff's requests for information and invited Plaintiff to participate in Defendant's litigation against the tortfeasor. Defendant also kept Plaintiff informed as to the progress of the litigation, the anticipated settlement, and the actual settlement of his and his wife's claims against the tortfeasor. However, Defendant has not honored Plaintiff's request for reimbursement.

Consequently, Plaintiff filed this suit and moved for summary judgment. Pursuant to the Court's Order of August 2, 2001, the Motion was held in abeyance until the completion of discovery. Defendant then filed a timely Response [Tab 11], and Plaintiff filed a timely Reply [Tab 13]. Plaintiff also filed a Notice to the Court regarding *Great–West Life v. Knudson* [Tab 14].

## II. DISCUSSION

In ruling on a motion for summary judgment, a district court must view the evidence and all reasonable factual inferences arising from it in the light most favorable to the non-moving party. *See Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992). Summary judgment may be en-

tered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Federal Rules of Civil Procedure* 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995). "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Furthermore, the mere presence of an alleged factual dispute between the parties does not make summary judgment improper; a genuine issue of material fact must exist for a court to deny summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the movant's entitlement to judgment as a matter of law is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Catrett*, 477 U.S. at 323, 106 S.Ct. 2548.

■ In the case at bar, Defendant has raised four arguments in opposition to Plaintiff's Motion for Summary Judgment. First he argues that Plaintiff, as merely a "claims processor," has no standing to bring suit because it is not a fiduciary under ERISA. As Plaintiff points out, however, in the Eleventh Circuit, an assignment of rights gives the assignee standing to sue. *See Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir.1997).

The Plan at issue provides:

For purposes of subrogation and right of recovery, Great West will have the sole right to make claims under the Subroga-

tion and Right of Recovery Provision contained in the Plan. In its sole discretion Great–West may litigate, negotiate, settle, compromise, release or waive any such claim. *The Contractholder hereby assigns to Great–West all of its rights to make, litigate, negotiate, settle, compromise, release or waive any such claim.*

Exhibit A to Plaintiff's Reply [Tab 13], Stop Loss Contract Schedule A. The Court finds that, given this language, Plaintiff is an assignee of rights. Accordingly, Plaintiff has standing to bring suit.

Second, Defendant argues that "the action brought by [Plaintiff] is arbitrary and capricious and not brought in good faith." Defendant alleges that his employer had led him to believe that it had reserved the right to reimbursement for medical expenses and that it was not the employer's policy to seek reimbursement. Plaintiff initiated this suit without the employer's knowledge or request, so, according to Defendant, Plaintiff's decision was neither rational nor in good faith. However, under the provision of assignment quoted above, seeking reimbursement is within Plaintiff's "sole discretion." Accordingly, the Court finds Plaintiff's decision to seek reimbursement is neither arbitrary and capricious nor in bad faith.

■ Defendant's third argument is that the "make whole" doctrine should be applied. Under this theory, Plaintiff argues he was not made whole by the $40,000 settlement award because his claim had a minimal value of $250,000. Accordingly, Plaintiff would not be entitled to recover. As the Eleventh Circuit has explained, however, "At most, the make whole doctrine operates as a default rule. As a default rule, the make whole doctrine applies to limit a plan's subrogation rights where an insured has not received compensation for his total loss *and* the plan does not explicitly preclude operation of

the doctrine." *Cagle,* 112 F.3d at 1521 (citations omitted). Therefore, the Eleventh Circuit reasoned, "the parties can contract out of the doctrine" so long as the Plan "includes language specifically allowing the Plan the right of first reimbursement out of any recovery the participant was able to obtain even if the participant were not made whole." *Id.* at 1521, 1522 (citations and internal quotations omitted).

In the case at bar, the contract provides:

If the covered person or his or her legal representative:

- makes any recovery from any of the sources described above; and
- fails to reimburse Great–West for any benefits which arise from the Illness, sickness or bodily injury;

then:

- the covered person or his or her legal representative will be personally liable to Great–West for the amount of the benefits paid under this Plan; and
- Great–West may reduce future benefits payable under this Plan for any Illness, sickness or bodily injury by the payment that the covered person or his or her legal representative has received from the Other Party.

Great–West's first lien rights will not be reduced due to the covered person's own negligence; *or due to the covered person not being made whole;* or due to attorney's fees and costs.

(emphasis added). This language is an express rejection of the make whole doctrine. Thus, the Court finds that the make whole doctrine does not apply to Plaintiff's claim.

Finally, Defendant argues that a genuine issue of material fact exists as to the amount actually owed Plaintiff. Specifically, Defendant alleges that (1) via letter of August 18, 2000, Plaintiff asserted a claim for $9,851.00; (2) Georgia Farm Bureau paid $10,000 in "Med Pay"; and (3) Defendant paid $1,758.19 of his own money.

■ The letter of August 18, 2000, stated that "at least" $9,851.00 had been paid and indicated, "[T]his amount is subject to revision." *See* Exhibit B to Defendant's Response [Tab 11]. A subsequent letter stated the "current lien" was $9,851.00. *See* Exhibit C to Defendant's Response. These letters were sent almost a year before Defendant settled his claim. Defendant has offered no evidence—other than his Affidavit in which he states he received the letter of August 18, 2000—that indicates Plaintiff only paid $9,851.00 total. Plaintiff, on the other hand, has offered (1) the Affidavit of Loree Forde, the Associate Manager, Group Insurance Operations for Plaintiff, in which she states the amount paid by Plaintiff is $20,136.30 and (2) an itemization totaling the same amount. *See* Exhibits 1 and B to Plaintiff's Concise Statement of Material Facts [Tab 8]. The Court thus finds Defendant has failed to present evidence sufficient to controvert Plaintiff's claim for $20,136.30. Furthermore, the Court finds that a $10,000 payment by Georgia Farm Bureau and a $1,758.19 payment by Defendant in no way serve to controvert Plaintiff's entitlement to the funds it paid. Accordingly, Defendant has failed to establish a genuine issue of material fact.

■ The Court further finds that the recent case of *Great–West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), is distinguishable from the one at bar. In that case, the Supreme Court held that seeking repayment of past due contractual amounts under a plan like the one at issue here was not a suit in equity and could not be enforced under 29 U.S.C. § 1132(a)(3). However, the Court noted:

In contrast, a plaintiff could seek restitution *in equity,* ordinarily in the form

of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 714–15 (quoting Restatement of Restitution, § 215, Comment *a*, p. 867 (1936)). Here, Defendant has placed the amount in controversy, which came directly from the settlement, in a non-interest-bearing trust account. Therefore, the funds are identified and clearly traceable to the award from third parties. Accordingly, Plaintiff may seek restitution in equity.

### III. CONCLUSION

Based on the foregoing, the Court **HEREBY GRANTS** Plaintiff's Motion for Summary Judgment. Defendant is **HEREBY DIRECTED** to pay Plaintiff the $20,136.30 that his attorney has held in trust.