**WELLMARK, INC., Plaintiff,**

v.

**Christopher DEGUARA, Defendant.**

No. 4:02–CV–40534.

United States District Court,
S.D. Iowa,
Central Division.

April 7, 2003.

David M. Swinton, Ahlers & Cooney Pc, Des Moines, IA, for Plaintiff.

Roxanne Conlin, Conlin & Associates PC, Des Moines, IA, Richard S Mac-Naughton, Pop & Associates, Beverly Hills, CA, for Defendant.

## ORDER DENYING DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS [1]

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Clerk's No. 18). The parties have not requested a hearing on the motion.[2]

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Christopher Deguara was injured in an automobile accident on February 22, 2001, and incurred approximately $668,498 in medical expenses as a result of the accident. Deguara's medical expenses were covered under two employee welfare benefit plans ("the Plans").[3] Both Plans were subject to the Employee Retirement Income Security Act ("ERISA"). The medical insurance coverage for both Plans was provided by Wellmark.[4] The two Plans had identical subrogation clauses which entitled the Plans to the insured's legal rights to collect damages against any responsible third party. The Plans' provisions further advised the insured if he received payment from a third party for expenses already paid by the Plans, he was required to reimburse the Plans to the extent of benefit payments the Plan made on his behalf.

Deguara and two other injured passengers brought a personal injury lawsuit in California state court ("tort action") against the driver of the vehicle, Tanner Hicks. During the pendency of the tort action, Wellmark brought the present action in federal court pursuant to 28 U.S.C. § 1332 [5] and 29 U.S.C. § 1132(e)(2),

---

1. Defendant has two other motions pending before the Court: (1) Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(3) for improper venue, and (2) in the alternative, Motion to Transfer Pursuant to 28 U.S.C. §§ 1404, 1406 (docketed as Clerk's No. 17). Ruling on those motions will be rendered in a separate Order.

2. The Court notes in Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Clerk's No. 18), he states, "[t]his motion is based on the Brief submitted herewith, all the Court's records in this action, and what other oral or documentary evidence which the Court may allow at the hearing of this motion." This statement does not comply with Local Rule 7.1(c); therefore, having determined no hearing would be necessary, the Court has not set a hearing on the motion.

3. Deguara had an employer-funded plan, AllianceSelect, through his employer Bloodgood, Sharp, Buster Architects & Planners. He was also a beneficiary on a self-funded group plan, Classic Blue Traditions, through his mother's employer, Act, Inc.

4. Wellmark provided administrative services to Deguara's self-funded plan and both administrative and insurance services to the employer-funded plan.

5. Wellmark is an Iowa corporation, and Deguara is a resident of California. When this lawsuit was filed, Wellmark sought more than $75,000 of the tort action proceeds; therefore, diversity of citizenship and the amount in controversy requirement of 28 U.S.C. § 1332 were satisfied. However, the parties subsequently stipulated that only $70,000 is disputed; therefore, the amount in controversy requirement is no longer satisfied, and the Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

ERISA's civil enforcement provision. Wellmark requests declaratory judgment over the proceeds of the tort action, arguing it is entitled to those proceeds under the terms of the Plans.

Before Wellmark perfected service upon Deguara, a settlement was reached in the tort action. The settlement divided the insurance policy limit of $500,000 equally among the three plaintiffs who each received $166,666. Under the terms of the settlement, Hicks' insurer, Allstate, sent a payment of $19,291.45 directly to Wellmark. Because this sum was considerably less than Wellmark's lien, Wellmark moved for a temporary restraining order (TRO) to preserve the remainder of the proceeds.[6] Wellmark persuaded the Court in light of the Supreme Court's decision in *Great–West Life & Annuity Insurance Company v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), that it would suffer irreparable harm if the proceeds were not identifiable. Wellmark further argued there was a high probability of success on the merits of the claim by virtue of the Plans' subrogation rights.

The Court granted the TRO. Prior to the expiration of the TRO, to avoid the time and cost of a preliminary injunction proceeding, the parties agreed by way of a stipulation to hold a portion of the funds ($70,000) in a federally insured interest bearing account. In the stipulation, Wellmark clarifies that the $19,291.45 received from Allstate represents *only part* of the proceeds to which it claims a right of subrogation and/or reimbursement, and that by accepting this amount it was not waiving its rights to recover other funds. As consideration for this compromise, Wellmark agreed to limit further recovery attempts to the $70,000. Wellmark agreed to the stipulation for the sole purpose of keeping the funds segregated and identifiable.

Deguara filed this Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Deguara asserts dismissal is appropriate because the relief Wellmark seeks pursuant to 29 U.S.C. § 1132 is prohibited under the holding in *Great–West.*

## II. STANDARD FOR MOTION TO DISMISS

"A complaint should not be dismissed unless it appears beyond a doubt that plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief." *Klett v. Pim,* 965 F.2d 587, 589 (8th Cir.1992) (citing *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989)). The complaint must reveal an insuperable bar to relief on its face to warrant a Rule 12(b)(6) dismissal. *Id.* (citing *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989)).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On a motion to dismiss, the court must accept and liberally construe all plaintiff's facts as true. *Id.* In construing the facts, the court shall "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997). If a motion to dismiss is pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must only consider the pleadings in determining whether the

---

6. Initially, Wellmark moved for a preliminary injunction; when the settlement was reached, Wellmark immediately filed a motion for a temporary restraining order.

plaintiff has stated a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

## III. DISCUSSION

The Supreme Court has often iterated "ERISA's civil enforcement provision, § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, provides the exclusive vehicle for actions asserting a claim for benefits under health plans governed by ERISA, and therefore that state laws that create additional remedies are pre-empted." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355,——, 122 S.Ct. 2151, 2172, 153 L.Ed.2d 375 (2002) (Thomas, J., dissenting) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). "ERISA is, we have observed, a 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). The Court has been " 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Great–West*, 534 U.S. at 209, 122 S.Ct. 708 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)).

> Section 502(a)(3) authorizes a civil action may be brought . . . (3) 'by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provi-

> sions of this subchapter or the terms of the plan.'

*Id.* (quoting 29 U.S.C. § 1132(a)(3) (1994)). Therefore, an action for the civil enforcement of the terms of an employee benefit plan will fall under § 502(a)(3) only if it is an action for equitable relief. *Id.*

In *Mertens v. Hewitt Associates*, the Supreme Court reasoned, " '[e]quitable' relief must mean something less than all relief." ' *Id.* at 209, 122 S.Ct. 708 (quoting *Mertens*, 508 U.S. at 258 n. 8, 113 S.Ct. 2063). At issue in *Mertens* was whether employees who participated in a retirement plan offered by their employer could bring suit under ERISA against the retirement plan's actuary for monetary losses caused by the actuary's errors. *Mertens*, 508 U.S. at 250–51, 113 S.Ct. 2063. The Court reasoned that although the employees stated their suit was for " 'appropriate *equitable* relief' under § 502(a)(3)", they were not seeking a "remedy traditionally viewed as 'equitable,' such as injunction or restitution". *Id.* at 255, 113 S.Ct. 2063. In fact, the Court found they sought "nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties". *Id.* As such, they sought "the classic form of *legal* relief", which is not available under § 502(a)(3). *Id.* (citing *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)).

The Court further narrowed the relief available under § 502(a)(3) in *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. at 221, 122 S.Ct. 708. At issue in *Great–West* was whether, under § 502(a)(3), an insurance company had the right to recover the proceeds of a state court settlement imposing a money judgment on the third-party tortfeasor. *Id.* at 209, 122 S.Ct. 708.

The matter now before this Court essentially turns on the reading of the *Great–West* case. Accordingly, that case must be discussed in some detail.

*Great–West* arises out of a June, 1992, automobile accident which rendered Janette Knudson quadriplegic. *Id.* at 207, 122 S.Ct. 708. Knudson was covered by a health and welfare plan (the Plan) through her husband's employer. *Id.* The Plan paid $411,157.11 in medical expenses; Great–West Life & Annuity Insurance Co. (Great–West) paid all but $75,000 of that amount. *Id.* at 207, 122 S.Ct. 708. The Plan had a reimbursement provision which gave it the right to any recovery paid to the beneficiary by a third party, not to exceed the amount of benefits paid by the Plan. *Id.* The reimbursement provision further imposed personal liability on the beneficiary if she were to recover from a third party and failed to reimburse the Plan. *Id.* The Plan assigned to Great–West all its rights under the reimbursement provision. *Id.*

In 1993, Knudson filed a lawsuit in a California state court against several parties, including the car manufacturer, for injuries she suffered as a result of the accident. *Id.* The parties negotiated a settlement which designated $256,745.30 to a Special Needs Trust account for Knudson's medical care, $373,426 for attorney's fees and costs, $5000 to reimburse the Medi–Cal program, and $13,828.70 to satisfy Great–West's claim under the reimbursement provision. *Id.* The state court approved the settlement and ordered the defendant to pay the amount allocated to the Special Needs Trust account directly into that account and the remainder to be paid to Knudson's attorney. *Id.* The attorney was in turn directed to disperse the designated amounts to Medi–Cal and Great–West. *Id.*

During the settlement negotiations, Great–West filed a federal court action under ERISA seeking injunctive and declaratory relief, arguing it was entitled to $411,157.11 of the proceeds of the settlement as provided by the reimbursement provision of the Plan. *Id.* The district court granted Knudson summary judgment finding the settlement limited Great–West's right to reimbursement under the Plan to $13,828.70. Great–West appealed. *Id.* at 209, 122 S.Ct. 708. The Ninth Circuit affirmed on other grounds, finding "judicially decreed reimbursement for payments made to a beneficiary of an insurance plan by a third party is not 'equitable relief' and is therefore not authorized by § 502(a)(3)." *Id.* (citing *Great–West Life & Annuity Ins. Co.*, 208 F.3d 221, 2000 WL 145374 (9th Cir. Feb. 7, 2000) (unpublished)). The Supreme Court granted certiorari on the issue of whether the relief Great–West sought was equitable relief available under § 502(a)(3) or legal relief which is not. *Id.*

Justice Scalia, writing for the majority, distinguished legal restitution from equitable restitution. *Id.* at 209–11, 122 S.Ct. 708. The Court reasoned, a claim is for "legal" restitution "when the plaintiff cannot 'assert title or right to possession of particular property.'" *Id.* at 213, 122 S.Ct. 708 (quoting 1 D. Dobbs, Law of Remedies § 4.3(1), at 587–88 (2d ed.1993)). Whereas, a claim is for "equitable" restitution when the "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* Thus, "[a] court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." *Id.* The Court found Great–West sought "legal relief—the imposition of personal liability on [Knudson] for a contractual obligation

to pay money" which was not available under § 502(a)(3). *Id.* at 221.

In the present case, Wellmark seeks a declaratory judgment arguing it is entitled to the proceeds of the tort action under the terms of the Plans. Wellmark paid approximately $668,498 for Deguara's medical expenses, and Deguara reached a settlement with the third party for $166,666. However, unlike the proceeds at issue in *Great–West,* the proceeds in the present case are in Deguara's possession. Whereas, in *Great–West,* Knudson never had possession of the proceeds. There, the award was dispensed into two accounts: the Special Needs Trust account and the attorney's client trust fund. The funds in the attorney's client trust fund were dispensed to Medi–Cal and Great–West for reimbursement, and the remainder was for attorney's fees and costs. Knudson did not receive any of the funds sent to her attorney.

Deguara argues *Great–West* requires dismissal of the present action for failure to state a claim under ERISA. He argues Wellmark seeks to enforce its right to reimbursement, and, as such, it seeks legal relief which is not available under § 502(a)(3). Deguara interprets *Great–West* as the Supreme Court's check on the abuse of the federal judiciary by insurers trying to be fully reimbursed. Deguara opines that post-*Great–West* cases which focus on the "irrelevant" location of the

third party recovery funds are incorrectly decided.

Deguara further argues that *Great–West* limits the equitable relief available under ERISA to the type described in *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), and, therefore, recovery is limited to fraudulent transfers of trust property.[7] Deguara believes *Great–West* stands for the unavailability of reimbursement under ERISA and finds the location of third party recovery funds is irrelevant.

In opposition to Deguara's understanding of *Great–West,* Wellmark contends the location of the funds is central to the application of the principles set forth by the Supreme Court. Wellmark argues it seeks to enforce subrogation or reimbursement provisions from traceable funds which were in the control or possession of the plan participant; therefore, it seeks equitable relief and properly states a claim under § 502(a)(3).

Post-*Great–West* courts dealing with the issue of whether subrogation clauses can be litigated under ERISA have taken two different approaches.[8] Several courts have reasoned that after *Great–West,* the type of relief the insurer seeks turns on whether the insured is in possession of funds. *See, e.g., Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439, 445 (5th Cir.2002) (finding "the defendants in this case, like

---

**7.** In *Great–West,* the Court merely stated, "[w]hile we did not expressly distinguish between legal and equitable restitution, the nature of the relief we described in *Harris Trust*—a claim to specific property (or its proceeds) held by the defendant—*accords with* the restitution we describe as equitable today." *Great–West,* 534 U.S. at 215, 122 S.Ct. 708 (emphasis added). This language does not suggest the *only* equitable relief available under ERISA is the type defined in *Harris Trust.* Contrary to Deguara's characterization of the principles set forth in *Harris Trust,*

that court did not limit recovery under § 502(a)(3) to unlawfully transferred trust property.

**8.** Only cases which have facts similar to the present case were used for this analysis, that is, cases in which the ERISA plan paid medical expenses for the insured who later recovers in a third-party tort action. At issue in all these cases was whether the enforcement of the insurer's subrogation clause could be litigated under § 502(a)(3).

the Knudsons in *Great–West*, are not in possession of the disputed funds, a fact that Justice Scalia found extremely important in Great–West" therefore, § 502(a)(3) does not authorize suit); *IBEW–NECA Southwestern Health & Benefit Fund v. Douthitt*, 211 F.Supp.2d 812, 816 (N.D.Texas 2002) (finding "Plaintiffs seek a constructive trust over particular funds, separate and apart from Defendant's personal resources, and only to the extent of the benefits it provided", therefore *Great–West* did not preclude jurisdiction because the relief sought was equitable under § 502(a)(3)); *Allison v. Wellmark, Inc.*, No. C00–3015, 2002 WL 31818946, at *8 (N.D.Iowa Oct. 15, 2002)[9] (finding insured's state law claim challenging the subrogation rights of the insurer was preempted by ERISA, therefore, the court had subject matter jurisdiction, and since Wellmark sought a constructive trust over the proceeds of the tort action, the action was allowed under *Great–West* ); *Forsling v. J.J. Keller & Assocs., Inc.*, 241 F.Supp.2d 915, 917 (E.D. Wis. Jan. 15, 2003) (reasoning the insurer had a contractual entitlement to the funds, the funds could "clearly be traced to particular funds or property in the defendant's possession",

and the insurer was not trying to impose personal liability on the beneficiary, rather, it was trying to restore to the plan particular funds in the beneficiary's possession) (quoting *Great–West*, 534 U.S. at 213, 122 S.Ct. 708); *Great–West Life & Annuity Ins. Co. v. Brown*, 192 F.Supp.2d 1376, 1381 (M.D.Ga.2002) (finding funds sought by plaintiff from defendant's third-party settlement award which were placed by defendant in a trust account were clearly traceable and identifiable, therefore, plaintiff was seeking restitution in equity).[10]

On the other hand, the Ninth Circuit found that *any* attempt by an insurer to enforce the terms of a subrogation clause is a request for reimbursement which is legal relief and not available under § 502(a)(3). *See Westaff (USA) v. Arce*, 298 F.3d 1164, 1167 (9th Cir.2002) (reasoning that even though funds recovered by the insured are in the insured's possession (escrow account) and identifiable, an action to determine the rights of the insurer under the plan's subrogation clause is a request for legal relief and not authorized by § 502(a)(3)). The Ninth Circuit follows the ultimate reasoning of *Great–West* without noting the essential factual distinction

**9.** Deguara suggests *Allison* is an unpublished opinion and should not be cited. *Allison* is available through Westlaw and LEXIS electronic services but has not been selected for publication in the reporter system. This is not the same as an opinion which is considered *unpublished.* More importantly, the Court recognizes *Allison* is a district court opinion and as such is not binding authority; therefore, publication does not change the weight or persuasion of the legal principles offered.

**10.** There is a trilogy of cases which reason the timing of the action to recover proceeds is also important. *Compare Primax Recoveries Inc. v. Goss ex rel. Goss*, 240 F.Supp.2d 800, 803 (N.D.Ill.2002) (finding § 502(a)(3) prohibited the plan from seeking to impose a trust on *potential* proceeds the injured party

*might* recover in his action against the tortfeasor *stating that* "[a]llowing *suits* of this nature would allow parties to circumvent the statute based simply on when they file the lawsuit, rather than the relief they desire"), *and Primax Recoveries Inc. v. Carey*, No. 00–cv–8337, 2002 WL 1968339, at *3 n. 5 (S.D.N.Y. Aug.23, 2002) (finding the request for an equitable lien against *future* settlement is barred by *Great–West* "because they are the entirely hypothetical fruit of a potential future settlement that does not yet exist and may never come into being at all"), *with Primax Recoveries Inc. v. Duffy*, 204 F.Supp.2d 1111, 1113 (N.D.Ill.2002) (holding *Great–West* bars a plan fiduciary seeking enforcement of a subrogation clause from settlement funds *already received* but does not bar a lien on specific funds yet to be received).

Justice Scalia specifically discussed when the "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession". *Great–West*, 534 U.S. at 213, 122 S.Ct. 708. That factual distinction has importance that cannot be disregarded.

■ This Court finds the possession theory is the correct read of *Great–West*. That is, attempts by an ERISA plan or insurer to recover settlement proceeds to which it is entitled under a subrogation or reimbursement provision are only prohibited under § 502(a)(3) if the insured is not in the possession of clearly identifiable proceeds.

In *Great–West*, the Court reasoned that the relief sought was not equitable *because* "the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the settlement of respondents' tort action—are not in respondents' possession." *Great–West Life & Annuity Ins. Co.*, 534 U.S. at 214, 122 S.Ct. 708. The recovered funds "were paid by two checks, one made payable to the Special Needs Trust and the other to respondents' attorney (who, after deducting his own fees and costs, placed the remaining funds in a client trust account from which he tendered checks to respondents' other creditors, Great–West and Medi–Cal)." *Id.* All the funds were dispersed to parties *other than* Knudson. *Id.* Therefore, the monies Great–West sought would require Knudson to pay from funds *other than the funds recovered from the third party;* as such, it was an attempt by Great–West to bring a personal liability action against Knudson under ERISA.

■ In the present case, after the settlement was reached, Allstate sent a check directly to Wellmark and a check for the remainder of the settlement to Deguara's attorney. Deguara's attorney placed the funds in his client trust account, $70,000 of which is now in a federally insured account pending the outcome of this proceeding. Wellmark seeks identifiable property to which it claims entitlement under the terms of the Plan. The funds are in an account over which Deguara has control unlike the funds sought in *Great–West*. Therefore, Wellmark is not attempting to hold Deguara personally liable as Great–West tried to hold Knudson. Accordingly, the relief Wellmark seeks is equitable not legal relief.

The Court agrees with Deguara that *Great–West* prevents couching a request for legal relief as an equitable remedy through inventive lawyering and clever pleading. However, the Court does not agree that *Great–West* suggests *any* action for reimbursement is necessarily a request for legal relief and therefore not available under ERISA.

## IV. CONCLUSION

Deguara is in possession or control of $70,000 which is clearly traceable and identifiable as a portion of the tort action settlement proceeds. Wellmark has not been reimbursed the full amount it paid on Deguara's behalf and Deguara would be unjustly enriched if he were allowed to keep those funds. Therefore, Wellmark's claim over the funds is in equity, not at law, and is properly brought under § 502(a)(3). Accordingly, Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under ERISA (Clerk's No. 18) is denied.

**IT IS SO ORDERED.**