B.P. AMOCO CORP., f/k/a Amoco Fabric and Fibers, Plaintiff,

v.

Timothy E. CONNELL and Lynn Connell, individually and as natural guardians and next friends of Hunter Connell, a minor, and as trustees, and Reliance Trust Company, as trustee of a trust for the benefit of Hunter Connell, Defendants.

No. CIV.A.7:02–CV–89 (HL).

United States District Court, M.D. Georgia, Valdosta Division.

June 1, 2004.

John D. Dixon, Atlanta, GA, John D. Kolb, Louisville, KY, for Plaintiff.

Olin Wayne Ellerbee, Valdosta, GA, for Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

Plaintiff B.P. Amoco Corp. ("Amoco") has filed a motion for summary judgment against Defendants in this case, in which Plaintiff seeks restitution for benefits paid under an employee welfare benefits plan, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* Upon due consideration of the evidence submitted by the parties, the relevant legal authorities, and the arguments of counsel, and for the reasons set forth below, the Court finds that there are no genuine issues of material fact, and that the Plaintiff is entitled to judgment as a matter of law. Accordingly, Plaintiff's motion for summary judgment is hereby **GRANTED.**

■ Amoco seeks restitution for medical care benefits it paid on behalf of Hunter Connell, who suffered irreversible brain injuries during the course of his birth on February 29, 1996. In 1997, Hunter's father, Defendant Timothy Connell ("Mr. Connell") became a participant in Amoco's self-funded benefits plan ("the Plan"), which provided health and medical benefits to Plan participants and their covered dependents. Hunter, as a covered dependant, was a beneficiary of the Plan. Amoco paid $64,531.45 in benefits to cover Hunter's treatment.[1]

---

1. In their response to Plaintiff's statement of material facts, Defendants dispute the testimony of Mark McHaffie regarding the benefits paid. Defendants offer no evidence to contradict this testimony, however. At summary judgment, it is not enough for a party opposing the motion to make a dismissive denial of evidence presented by the moving party. "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995) (quoting *Chanel, Inc. v. Italian Acti-*

As Hunter's next friend and guardian, Mr. Connell filed a lawsuit against several doctors and a midwife, alleging that their negligence or malpractice during Hunter's birth had caused the child's brain injuries. In 2001, the parties in that lawsuit reached a settlement agreement, under the terms of which the sum of $350,964.00 was placed into an irrevocable special needs trust for Hunter's benefit. Defendant Reliance Trust Company ("Reliance") was appointed to be the trustee. The settlement agreement was approved by Judge Richard Kent of the State Court of Lowndes County. In his order approving the minor settlement, Judge Kent ordered the Connells' counsel "to satisfy and negotiate with any lienholder and pay appropriate sums for past medical treatment upon showing of valid lien interests." Plaintiff's Ex. 2, p. 4.

■ Amoco had a valid lien interest in the proceeds from the settlement by virtue of language in its Plan requiring reimbursement to the Plan from any other compensation, including settlement proceeds. The Plan specifically provides that in the case of settlement of a claim related to any illness or injury for which the participant has received benefits, the participant "must promptly reimburse the [P]lan for any benefits it paid relating to that illness or injury, up to the full amount of the compensation received from the other party (regardless of how that compensation may be characterized and regardless of whether you or your dependent have been made whole)." Plaintiff's Ex. 1, A-26, B-32, C-94. The Plan explains that this agreement to reimburse the Plan from any settlement proceeds is a condition for coverage, stating that "[i]n order to secure the rights of the [P]lan under this section, you or your dependent hereby ... grant to the plan a first priority lien against the proceeds of any such settlement, verdict, or other amounts received by you or your dependent." *Id.*

On May 1, 2001, the Connells' counsel mailed a letter to the Plan administrator, giving notice of the pending settlement and acknowledging that the Plan might have a claim for reimbursement. The administrator responded through counsel, who sent a letter dated September 24, 2001. With that letter, the administrator's counsel provided an itemized list of benefits paid on Hunter's behalf and requested further information regarding the Connells' lawsuit. The letter seems to indicate that counsel was unaware that a settlement had already been concluded, and reminds the Connells of their obligation to make reimbursement. To date, the Connells have not reimbursed the Plan.

■ The primary issue for resolution in this case is whether the relief which Plaintiff seeks is available under 29 U.S.C. § 502(a)(3). In that code section, ERISA authorizes a civil action by a plan fiduciary "(A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan." Because ERISA authorizes only equitable relief for a plan fiduciary, the Supreme Court has held that a plan fiduciary who seeks reimbursement from settlement proceeds cannot impose personal liability on a defendant for breach of contractual obligations, but can only pursue the sort of remedy that was typically available in equity. *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). Courts within this district and in other circuits have interpreted *Knudson* to allow a plan

---

*vewear of Florida, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991)). In the absence of such evi-

dence, there is no genuine issue of material fact as to the payment of these benefits.

fiduciary to pursue the equitable remedy of restitution where there are specifically identifiable proceeds from the settlement in the possession of one of a defendant and the proceeds rightfully belong to the plan by virtue of a reimbursement clause in the plan.

In a case with facts directly comparable to the facts in this case, Judge C. Ashley Royal of this Court has previously held that a plan fiduciary was able to pursue restitution in equity. In *Great–West Life & Annuity Ins. Co. v. Brown*, 192 F.Supp.2d 1376 (M.D.Ga.2002), the defendant, a beneficiary of a medical benefits plan, obtained a settlement for injuries sustained in a hit-and-run motor vehicle accident. The proceeds of the settlement were placed in a trust account. Judge Royal held that because the funds in the trust account were identified and clearly traceable to the settlement award, the plan was authorized to seek equitable restitution. In support of this holding, he cites a long passage from *Knudson* that explains the nature of the equitable remedy of restitution and its difference from legal damages:

> In contrast [to legal damages], a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien

upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Brown*, 192 F.Supp.2d at 1380–81 (quoting *Knudson*, 534 U.S. at 213–14, 122 S.Ct. 708) (citations omitted in original). This language from *Knudson* indicates that plan fiduciaries may obtain restitution where the actual proceeds from a settlement remain intact, even if they may not obtain legal remedies by imposing a personal liability upon the plan beneficiary.

The *Brown* holding is consistent with the holdings of courts in other circuits that have followed the "possession theory" in applying the restrictions of Section 502(a)(3). The Fifth Circuit, in particular, has followed the possession theory in a case that is factually similar to this case. In *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348 (5th Cir.2003), the plan fiduciary brought suit against a law firm that was holding settlement funds in a trust account on behalf of the plan beneficiary. The court first held that Section 502(a)(3) allowed the plan fiduciary to bring suit against the law firm even though the firm was not a signatory to the plan, noting that Section 503(a)(3) creates a broad "universe of possible defendants" in actions to enforce plan provisions. *Id.* at 352–353 (quoting *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244–46, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000)). Next the court found that the relief sought was equitable in nature because the plan sought "to recover specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan." *Id.* at 355.

■ The facts of this case differ from the facts of *Bombardier* in only one notable respect. In *Bombardier,* the plan beneficiaries themselves had control over the funds held in trust by their attorneys and thus had constructive possession of those funds. In this case, by contrast, the Plan beneficiaries—the Connells—do not have such control over the funds. Reliance, as trustee of the special needs trust, has full discretion to authorize the use of trust assets for the benefit of Hunter Connell. Following a decision of the Seventh Circuit in *Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Varco,* 338 F.3d 680 (7th Cir.2003), the *Bombardier* court analyzed the plan's claim under a three-part inquiry. The court inquired whether the plan sought to require funds "(1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) are within the possession and control of the defendant beneficiary." *Bombardier,* 354 F.3d at 357. In this case, as in *Bombardier* and *Varco,* the funds from the settlement remain intact and are held in a trust account. They are thus specifically identifiable. Under the terms of the Plan, that portion of those funds sufficient to reimburse the Plan for it payments belongs in good conscience to the Plan. The terms of the trust, however, indicate that Connells do not have ultimate control over the use of the funds. In *Bombardier* and *Varco,* the plan beneficiaries did have such control over the funds held in trust.

This distinction, while significant, does not defeat Amoco's ability to recover restitution in equity. Under *Knudson,* the most important consideration is that the settlement proceeds are still intact, and thus constitute an identifiable *res* that can be restored to its rightful recipient. Although these funds are not in the possession and control of the Defendant beneficiary, they are in the possession and control of the Defendant trustee, Reli-

ance, which does not have a rightful claim to them. Under the explicit terms of the Plan, Amoco has a superior right to recover a portion of the settlement proceeds sufficient to compensate for its payment of benefits. If a legal remedy were available to it, Amoco could simply sue to impose a personal liability on the Connells to reimburse its payment. ERISA, however, limits Amoco's remedies to those available in equity. The essence of the equitable remedy of restitution is the restoration of particular property to its rightful owner. With regard to equity, it is not of consequence that the person in possession of the property be in any sort of privity with the rightful owner of the property, if that property is clearly identifiable. Because the settlement proceeds in this case have not been disbursed and are still intact as the corpus of the special needs trust, Amoco has a right to restitution of its share, as a matter of law. Summary judgment is therefore appropriate.

■ As a final matter, the Court notes Defendants' argument that Amoco "has never shown the existence of any ERISA plan nor any document establishing any right of reimbursement for the medical expenses which began accruing on February 29, 1996" (Defendants' Brief, p. 5), and finds that argument to be without merit. Amoco seeks reimbursement for the benefits that it paid. There is no genuine dispute that Mr. Connell became a Plan participant in 1997, and that the Plan paid substantial benefits for Hunter's treatment over a period of years. The evidence in the record is insufficient to show whether Amoco paid benefits for treatment that took place before Hunter was actually a covered dependent under the plan. In any event, the date that the expenses began accruing is irrelevant in this case. It matters only that Amoco ultimately paid bene-

fits in the amount of $64,531.45, and that fact remains undisputed. It is the holding of the Court that Defendant Reliant now holds that sum in constructive trust for the benefit of Amoco. Pursuant to this holding, the Clerk is directed to enter judgment in favor of Amoco, and Reliant is ordered to restore the subject funds to Amoco.