**COMMUNITY INSURANCE CO., Plaintiff–Appellant Cross–Appellee,**

v.

**Troy G. MORGAN, Defendant–Appellee Cross–Appellant,**

**Dorothy Wright; Liberty Mutual Insurance Company, Defendants–Appellees.**

**Nos. 99–6669, 00–5002.**

United States Court of Appeals, Sixth Circuit.

Dec. 20, 2002.

Before KRUPANSKY, BOGGS, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), and invoking the supplemental jurisdiction of the district court, Appellant. Community Insurance Co. ("Community"), filed suit against defendants Troy G. Morgan, Dorothy Wright and Morgan's insurer Liberty Mutual Insurance Company ("Liberty"), seeking reimbursement pursuant to the terms of an ERISA plan for benefits paid by Community to Morgan to cover his medical expenses resulting from injuries he incurred as a result of a motor vehicle accident. The district court held that Community had failed to protect any rights it might have had against Wright or her insurer; that Community was entitled to judgment against Morgan to the extent of proceeds received by Morgan from Wright. Wright's insurer, or Liberty, less his attorney's fees and costs: and that Liberty was entitled to recover from Wright's insurer the funds advanced to Morgan by Liberty in anticipation of recovery from Wright and her insurer. On the authority of *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002),

we vacate the judgment and remand with instructions that this case be dismissed for lack of subject matter jurisdiction.

## I.

On August 31, 1996, in Campbell County, Kentucky, defendant Troy Morgan was severely injured when the motorcycle he was driving was involved in a collision with a vehicle negligently driven by co-defendant Dorothy Wright. Morgan incurred some $116,000 in medical costs.

Morgan has health insurance through an ERISA plan offered by his employer and administered by Community Insurance Company. Pursuant to its coverage agreement, Community paid Morgan's medical bills which totaled $116,529.83. The Plan Certificate of Insurance contains a subrogation proviso that states:

If we pay benefits under this Certificate, and you have a right to recover damages from another, we are subrogated to that right. You or your legal representative must do whatever is necessary to enable us to exercise our rights and do nothing to prejudice them.

We are subrogated to any right you may have to recover from another, his insurer, or under any "Uninsured Motorist." "Underinsured Motorist," "Medical Payments," "No-fault" or other similar coverage provisions."

The Certificate also spells out the plan's right to reimbursement stating:

If you recover damages from any party or through any coverage named above, you must hold in trust for us the proceeds of the recovery and must reimburse us to the extent of payments made.

The plan explicitly provides that Community, as plan administrator,

shall have discretionary authority to determine an individual's eligibility for benefits under the Group Contract and to construe the terms and conditions of this Certificate which describes [the Plan] benefits. Whenever we make a determination or construction which is not arbitrary and capricious, our determination will be final and conclusive.

Morgan timely sued Wright, the tortfeasor, in state court. Wright had $100,000 in liability coverage with State Farm. Morgan had liability insurance with Liberty Mutual Insurance Co., which included underinsured motorist coverage in the amount of $50,000. Realizing that because of the extent of Morgan's injuries, it would have to pay under the underinsured motorist coverage, Liberty paid Morgan $50,000 on the underinsured motorist claim, and irrevocably advanced him $100,000 (the policy limits of Wright's State Farm coverage) in order to preserve its subrogation rights against State Farm.[1] When it advanced the money to Morgan, Liberty executed an agreement with Morgan whereby Morgan agreed that Liberty was entitled "to the first proceeds of any settlement or judgment which may result from the exercise of any rights of recovery by Troy Morgan against Dorothy Wright up to the $100,000 hereunder paid."

Morgan's state court action against Wright was eventually settled by means of a mediated agreement providing, *inter alia*, that State Farm would pay the $100,000 policy limits to Liberty (essentially reimbursing Liberty for the money advanced to Morgan) and Wright would pay $7,500 in cash to Morgan and would exe-

---

1. According to the Kentucky Supreme Court's decision in *Coots v. Allstate Ins. Co.,* 853 S.W.2d 895 (Ky.1993), an insurer providing underinsured motorist coverage may safeguard its subrogation rights against the tortfeasor's insurer by paying to its insured the policy limits of the tortfeasor's liability insurance.

cute a note payable to Morgan in the amount of $30,000, bearing interest at 6%, secured by a mortgage on real property owned by Wright.

Before State Farm had made its payment to Liberty, Community filed the instant action, claiming that it was entitled to the $100,000 coming from State Farm, on the theory that its subrogation rights are superior to Liberty's. State Farm has not paid any proceeds to Liberty, and awaits the court's resolution of this controversy. Similarly, no payments have yet been made pursuant to the terms of the mediated agreement because of the instant litigation.

## II.

After we had heard oral argument in this case, the Supreme Court decided *Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), in which it held that ERISA does not authorize an action for money damages brought by an ERISA plan fiduciary against a plan beneficiary to enforce a reimbursement provision in the plan. In that case, the Court held that, regardless of how the fiduciary framed the complaint, it sought to impose personal liability on the plan beneficiary for a contractual obligation to pay money. Such an action, the Court held, is not an action in equity, but an action at law, and 29 U.S.C. § 1132(a)(3) authorizes only actions seeking equitable relief. 122 S.Ct. at 712.

■ We hold that *Knudson* requires this case to be dismissed for lack of jurisdiction. The claim of Community Insurance against Morgan, the plan beneficiary, for reimbursement under the terms of the plan is squarely precluded by *Knudson*. The application of *Knudson* to Community's claim against Liberty Mutual, however, requires a bit of explanation.

Community did not plead its claim against Liberty Mutual as a claim under ERISA, but as a state law claim for a judgment declaring, under the Kentucky law principles announced in *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (Ky.1993), the rights of the competing insurers to the State Farm policy limits of $100,000 that Liberty Mutual irrevocably advanced to Morgan. That this claim is pled as a state law claim, however, is not dispositive of the issue of jurisdiction; rather, it raises the question of whether this claim is preempted by ERISA. If it is, then Community's only cause of action must be found in ERISA. We conclude that after *Knudson*, no such cause of action is available.

We turn first to the question of preemption. State laws that "relate to" an ERISA plan are preempted by ERISA. 29 U.S.C. § 1144(a). For purposes of preemption, "state law" includes not only statutes but state common law tort and contract actions. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ("Unless these common law causes of action fall under an exception to § 514(a), therefore, they are expressly pre-empted.") A state law will be held to "relate to" an ERISA plan if the law either "has a connection with" or a "reference to" such a plan. *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 939 (6th Cir.1997).

Community, as the Plan Administrator and Fiduciary, brought this claim against Liberty Mutual claiming that under the terms of the ERISA plan, Community was entitled both to be reimbursed by Morgan, the plan beneficiary, for all of Morgan's medical expenses that Community had paid, and to be subrogated to Morgan's rights against Wright or State Farm, her insurer. Community claims that because it had begun to pay the medical bills before Liberty Mutual had paid or advanced

any money to Morgan, Morgan had no subrogation rights that he could assign to Liberty Mutual in exchange for Liberty Mutual's irrevocable advancement to him of the State Farm policy limits. Therefore, it is Community–not Liberty Mutual–that is entitled to the $100,000 policy limits of Wright's State Farm liability coverage. Liberty Mutual, on the other hand, contends that it, having paid its own underinsured motorist policy limits to Morgan and advanced to him the State Farm policy limits in order to protect its own subrogation rights under Kentucky law, has the superior claim to the State Farm money.

◼ Not only is this dispute brought by the plan fiduciary, we think it is clear that the dispute cannot be resolved without resort to the terms of the ERISA plan, and that being so, Community's state law claim has a connection with that plan. *See, e.g., Davies,* 128 F.3d at 940 (finding that the defendants' claim had a connection with the ERISA plan because "[r]esolution of defendants' claim for rescission requires an interpretation of the terms and conditions of Janet Davies's health insurance contract, a contract that is part of the ERISA-governed plan under which she seeks benefits."); *see also Zuniga v. Blue Cross & Blue Shield of Mich.,* 52 F.3d 1395, 1402 (6th Cir.1995) (finding ERISA preemption of plaintiff's breach of contract claim because it required an evaluation of the employee benefits plan). The state law claim is therefore preempted.

Because this state law claim is preempted by ERISA, it must be dismissed unless Community has stated a claim for which relief may be granted under ERISA. We conclude that it has not. In *Knudson,* the plaintiff insurer filed an action in federal court seeking injunctive and declaratory relief under § 1132(a)(3) to enforce the plan's reimbursement provision against the plan's insureds. The Court held that the relief available under § 1132(a)(3) is limited to "those categories of relief that were *typically* available in equity," *Knudson,* 122 S.Ct. at 712 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). Examining the relief sought by Great–West, the Court held that regardless of how the claim was clothed, it was a contractual claim for payment of money, relief that is not equitable in nature, and for which § 1132(a)(3) does not authorize an action. *Id.* at 719.

◼ As Great–West did in *Knudson,* Community seeks a declaration that its contractual rights under the plan entitle it to the payment of money. That Community seeks that payment from another insurer and not, at least in the claim at issue, from the plan beneficiary is a distinction without a difference for purposes of our analysis. To be authorized under § 1132(a)(3)–the only part of § 1132(a) that permits a civil action by a plan fiduciary for a claim other than for breach of fiduciary duty–Community's claim must be one "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Community does not seek an injunction, and therefore, to be authorized under this section, the claim must be for equitable relief to redress a violation of ERISA or the terms of this ERISA plan, or for equitable relief to enforce the provisions of ERISA or the terms of this ERISA plan. We hold that Community, like Great–West, does not seek equitable relief, but rather "seek[s] legal relief–the imposition of ... liability on respondents for a contractual obligation to pay money." *Knudson,* 122 S.Ct. at 719. For that rea-

son, as was the case with Great–West, § 1132(a)(3) does not authorize this action.

## III.

Accordingly, we VACATE the judgment of the district court and REMAND the case with instructions that it be dismissed for lack of jurisdiction.