**Virgilia GIVENS and Raymond Givens, Plaintiffs,**

v.

**WAL–MART STORES, INC. AND ASSOCIATES' HEALTH AND WELFARE PLAN and Administrative Committee of the Wal–Mart Store's, Inc. Associates' Health and Welfare Plan, Defendants.**

No. 8:03 CV 22.

United States District Court,
D. Nebraska.

Aug. 20, 2003.

See, also, 2004 WL 1682131.

Barbara K. Medbery, Hauptman, O'Brien Law Firm, Omaha, NE, for Raymond Givens.

Christopher A. Hedican and Heidi A. Guttau–Fox, Baird, Holm Law Firm, Omaha, NE, for Administrative Committee of Wal-Mart Store's Inc. Associates Health and Welfare Plan..

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

This matter is before the court on Filing No. 11, the Defendants' "Motion for Summary Judgment." For the reasons cited herein, the court denies the motion for summary judgment.

## I. BACKGROUND

On or about March 6, 2000, Plaintiff Virgilia Givens was involved in an accident with a non-party tortfeasor. Virgilia Givens received medical treatment for the injuries she sustained in the accident at various hospitals and from various health care professionals, who in turn billed Virgilia Givens for these services. Virgilia Givens presented claims to the Wal–Mart Associates Health and Welfare Plan (the "Plan"), which is a self-funded entity under the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 *et seq.* ("ERISA"). After informing Givens of the Plan's right to subrogation, the Plan honored the claims and paid Virgilia Givens' medical bills. Virgilia and Raymond Givens, subsequently, reached a settlement with the tortfeasor's insurance company regarding the accident whereby the insurance company paid its policy limits of $100,000.00.

On January 23, 2003, the Plaintiffs filed a "Petition for Declaratory Judgment" (Filing No. 1), and deposited with the clerk of this court the $100,000.00 settlement check. In response to the Plaintiffs' lawsuit, the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan ("the Administrative Committee"), pursuant to ERISA 29 U.S.C. § 1132(a)(2) and (a)(3), filed a counterclaim against the Plaintiffs for equitable relief and damages to enforce the Plan's subrogation and reimbursement interest in the settlement proceeds that the Givens received from the insurance company.

## II. ANALYSIS

### A. ENFORCEMENT OF ERISA SUBROGATION RIGHTS

In 2002, the United States Supreme Court decided *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122

S.Ct. 708, 151 L.Ed.2d 635 (2002), which altered the relevant ERISA remedial landscape. In *Great–West*, an ERISA plan paid medical expenses to the plan beneficiary and the beneficiary then received a settlement from a third party. The settlement was then distributed to the beneficiary's attorney, a special needs trust for the beneficiary's care, and to other lienholders in amounts approved by a state court. The plan, proceeding under § 502(a)(3), ultimately sued the beneficiary in federal district court to recover a portion of the settlement proceeds.

By its terms, § 502(a)(3) authorizes ERISA fiduciaries (like the Plan) "to obtain ... appropriate *equitable relief* ... to enforce ... the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii) (emphasis added). Writing for a five-Justice majority, Justice Scalia interpreted this statutory language to mean that § 502(a)(3) authorizes ERISA plans to pursue only that relief which was "typically available" in courts of equity, not in courts of law, in the days of the divided bench.[1] *Great–West*, 534 U.S. at 210, 122 S.Ct. 708. According to the Court, relief "typically available in equity" includes actions for specific relief, including injunction and certain forms of "equitable restitution" like constructive trust and equitable lien.[2] *Id.* at 211–14, 122 S.Ct. 708.

Furthermore, although the plan in *Great–West* characterized its claim to the settlement proceeds as one for both injunction and "restitution", the Court found that the plan was not seeking relief typically available in equity. On the injunction, the Court concluded that the plan was not seeking equitable relief because it did not seek to enjoin future harm, but merely to enforce payment of sums past due. *Id.* at 210–11, 122 S.Ct. 708. Likewise, Justice Scalia noted that "for restitution to lie in equity, the action must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S.Ct. 708. Applying this definition, he concluded that "equitable restitution" was not possible because the respondents did not have possession of the *particular settlement funds* to which the plan claimed a right. *Id.* (emphasis added). Accordingly, the Court opined that the plan's claim was, in substance, merely a legal claim "to impose personal liability .... for a contractual obligation to pay money." *Id.* at 210, 122 S.Ct. 708. Because "[m]oney damages are, of course, the classic form of legal relief," *Id.*, the Court held that the plan's action was not authorized by ERISA § 502(a)(3).

1. What "typically available in equity" means is a matter of some debate, and Justice Scalia's use of this phrase has generated significant criticism from ERISA scholars. *See* Tracy A. Thomas, *Justice Scalia Reinvents Restitution*, 36 Loy. L.A. L.Rev. 1063, 1064 (2003) (noting that, "[h]istorically, equitable restitution was not restricted to three types of formalistic claims seeking only the return of plaintiff's specific funds. To the contrary, equity was a flexible legal alternative that issued a variety of monetary remedies in order to address the failure of the hyper-formalist common law courts to redress wrongs."); John H. Langbein, *What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens,* *and Great West,* Yale Law & Economics Research Paper No. 269 (2003), available at "http://papers.ssrn.com/sol3/papers.cfm?abstract_id=371104# Paper Download" (Noting "profound flaws" in Justice Scalia's reasoning). Nevertheless, the court is obligated to try and render a decision faithful to the holding in *Great–West*.

2. Prior to *Great–West*, the Supreme Court had not subdivided restitution into component parts: "Admittedly, our cases have not previously drawn this fine distinction between restitution at law and restitution in equity ...." *Great–West*, 534 U.S. at 214–15, 122 S.Ct. 708.

## B. MOTION FOR SUMMARY JUDGMENT

■ In the present cases, Section 502(a)(3) is the very section under which the Plan proceeds. Because *Great–West* precludes the Plan from seeking "legal" relief under ERISA, the Plan has predictably pled its case as one seeking every form of equitable relief it can name, including "injunction, declaration of rights under the Plan, specific performance, mandamus, constructive trust, and equitable restitution …" Filing No. 10 at ¶ 13. In addition, the Plan alleges that under ERISA definitions, the Givens are actually "fiduciaries" of the Plan because they control Plan assets, and further, they have breached that fiduciary duty.[3] The Plan has submitted a motion for summary judgment on its claims, arguing that it properly seeks equitable relief under ERISA and is entitled to a judgment on the merits. Relying on *Great–West*, the Plaintiffs argue that the Plan's requests for "equitable relief" are simply artful pleading, and that the Plan is really seeking to enforce a contractual obligation to pay money which is not authorized by ERISA.

## C. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 612 (8th Cir.1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir.1999). The court views the evidence in the light most favorable to the nonmoving party, *see Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992), and gives the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *See Moore v. Webster*, 932 F.2d 1229, 1230–31 (8th Cir.1991). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir.1997) (*quoting Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The moving party "bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Shelter Insurance Companies v. Hildreth*, 255 F.3d 921, 924 (8th Cir.2001).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses and the rule should be interpreted in a way that allows it to accomplish this purpose. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990) (*quoting Celotex*, 477 U.S at 327, 106 S.Ct. 2548).

---

**3.** Actions for breach of fiduciary duty are equitable. *Strom v. Goldman, Sachs & Co.,*

202 F.3d 138 (2d Cir.1999).

## D.  EQUITY

### 1.  Constructive Trust over Funds in Court registry

*Great–West* clearly implies that ERISA plans might successfully seek a constructive trust or equitable lien pursuant to § 502(a)(3). In this case, the one potential problem in imposing a constructive trust is that the Plaintiffs are not in possession of the disputed funds: the settlement funds were deposited into the court's registry. Relying on *Great–West*, the Fifth Circuit held that acceptance of money into the court registry makes imposition of a constructive trust inappropriate. *See Bauhaus USA v. Copeland,* 292 F.3d 439, 446 (5th Cir.2002) (concluding that money in court registry was not in hands of defendant, and therefore, action could not lie). The *Bauhaus* court seized upon *Great–West's* holding that "for restitution to lie in equity, the action must seek . . . to restore to the plaintiff particular funds or property *in the defendant's possession." Id.* at 214, 122 S.Ct. 708 (emphasis added). According to the *Bauhaus* majority, whether the funds are in the defendant's possession was critical to the *Great–West* analysis.

This court parts company with the Fifth Circuit, and finds the dissent in *Bauhaus* provides the more compelling reading of *Great–West:* the fact that the disputed funds are in the court's registry, rather than in the hands of the principal obligor, does **not** mean that the remedy the plan seeks is automatically legal rather than equitable. *See id.* at 451 (Wiener, J., dissenting). As Judge Wiener states, the cardinal feature of *Great–West* is that "*[a]fter* the distribution of funds, the tort victim herself was left without specific, identifiable funds to which the ERISA plan could assert title. This fact made the remedy that Great–West sought to impose essentially personal and contractual damages—classically, a *legal* remedy, which the statute does not permit." *Id.* (Wiener,

J., dissenting). The *Great–West* test for whether a plan is seeking an unavailable legal remedy or an available equitable remedy hinged on *"where the money to pay the judgment would come from:* if from the [plaintiffs'] personal, fungible, and untraceable resources, the remedy sought was legal and proscribed. That was the case in *Great–West Life;* that is not the case [here]." *Id.* (Wiener, J., dissenting).

■ In this case, the non-party tortfeasor's insurance company issued a check in the amount of $100,000.00, which the Plaintiffs placed in this court's registry. "Asserting a claim against the funds in the registry of the [court] . . . does not require the imposition of general, *in personam,* responsibility on the [Plaintiffs]—the quintessentially *legal* remedy that the *Great–West* Court held was unavailable under § 1132(a)(3)(B). Instead, [the Administrative Committee] . is contesting title to a specific and identifiable quantum of funds *in custodia legis* that it claims as its own under the Plan." *Id.* at 451 (Wiener, J., dissenting). As the Defendants state in their brief: "it would be impossible for the Administrative Committee to impose personal liability on the Givens where the settlement proceeds at issue have never been interspersed with their personal finances but rather are held separately in the Court's account." *See* Filing No. 17, Defendants' Reply Brief.

■ Of course, ordinarily the obligor is in possession of the thing over which the court imposes a constructive trust. However, insofar as "a constructive trust is the formula through which the conscience of equity finds expression," *Counihan v. Allstate Ins. Co.,* 194 F.3d 357, 360 (2nd Cir. 1999) (*quoting Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919) (Cardozo, J.)), a constructive trust is "necessarily flexible to accomplish

its purpose." *Id.* at 361. The court finds that the fact that the contested funds are not technically in the possession of the principal obligors, the Plaintiffs, but, rather, are in the hands of the court's registry does not preclude the court's imposition of a constructive trust over the funds.

### 2. Medical Bills

■ In support of its motion for summary judgment, the Defendants offered Christy Herbaugh's Affidavit. Herbaugh, who is the Reimbursement Coordinator for the Plan, documents that the Plan paid $90,897.58 in medical bills that Virgilia Givens accrued after the accident. *See* Filing No. 13, Ex. 5, Affidavit of Christy Herbaugh, at ¶ 5. In response to the Defendants' motion for summary judgment, the Plaintiffs contend that the amount of medical bills that the Defendants paid is a disputed fact. *See* Filing No. 15, Brief Opposing Defendants' Motion for Summary Judgment, at 2. Nevertheless, the Plaintiffs proffer no evidence that even calls into question whether the Plan paid less than the Defendants have shown. Rather, the Plaintiffs merely assert that "Defendants have not produced evidence to substantiate allegations of amounts actually paid." *Id.* The court, while recognizing that such the Plaintiff's response is usually insufficient, does not find that Herbaugh's affidavit, without at least some supporting documentation, establishes the Defendant is entitled to a constructive trust in the amount of $90,897.58.

The court recognizes that according to the plain terms of the Plan, the Plan has "the right to ... recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf ... to the extent of any and all of the following payments: Any judgment, settlement or any payment made or to be made because of an accident, including but not limited to other insurance." Filing No. 13, Ex. 3 at D19. Additionally, the Plan provides that

it "has first priority with respect to its right to reduction, reimbursement and subrogation." *Id.* at D20. However, this subrogation/reimbursement right is possibly complicated by an interested party in this lawsuit, namely, Syndicated Office Systems ("SOS"). SOS has filed a notice in this case claiming a lien in the principal amount of $21,078.67 for medical, hospital, and nursing services rendered to Virgilia Givens at St. Joseph Hospital, Omaha, Nebraska for injuries resulting from Virgilia Givens' accident. *See* Filing No. 16. It is unclear, at this time, how SOS' lien affects the Plan's request for a constructive trust or equitable lien on the Plaintiffs' settlement proceeds. The matter may be a purely legal, resolvable on a renewed motion for summary judgment. At the present juncture in this case, however, with the uncertainty regarding SOS' lien and with the factual dispute that exists between the Plaintiffs and the Defendants over the amount of money the Plan paid for the Plaintiffs' medical bills, a judgment as a matter of law is premature.

### III. CONCLUSION

THEREFORE, IT IS HEREBY ORDERED:

That Filing No. 11, the Motion for Summary Judgment filed by the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan, is denied subject to reassertion.