**BLUECROSS BLUESHIELD OF SOUTH CAROLINA,**
**Plaintiff,**

v.

**Josue CARILLO and Vincente Carillo, Defendants.**

**No. CIV.A.4:05 CV 0044 H.**

United States District Court,
N.D. Georgia,
Rome Division.

May 25, 2005.

Ansel Franklin Beacham, III, Brinson Askew Berry Siegler Richardson & Davis, Rome, GA, Charles M. Cork, III, Gambrell & Stolz, LLC, Macon, GA, for Josue Carillo.

Polly M. Haley, Thomas H. Lawrence, Lawrence & Russell, Memphis, TN, Susan D. Taylor, Magruder & Sumner, Rome, GA, for BlueCross BlueShield of South Carolina.

## ORDER

DAVID L. MURPHY, District Judge.

This is a case filed under the Employee Retirement Income Security Act ("ERISA"). The case is before the Court on Plaintiff's Motion for a Preliminary Injunction [4], Defendants' Motion to Dismiss [16], and Plaintiff's Motion for Summary Judgment [17].

### I. Procedural Background

On February 23, 2005, Plaintiff filed this lawsuit. Plaintiff asserts claims under 29 U.S.C.A. § 1132(a)(3) of ERISA. Plaintiff seeks to require Defendants to reimburse Plaintiff from funds that Defendants received in a settlement for medical costs that Plaintiff paid on behalf of Defendants under the terms of an ERISA employee

benefit plan. Plaintiff requested that the Court enter a temporary restraining order and a preliminary injunction preventing Defendants and their counsel, Richard Yancey, from dissipating the settlement funds.

On February 25, 2005, the Court held a hearing with respect to Plaintiff's Motion for Temporary Restraining Order. On that same day, the Court approved an *ex parte* Temporary Restraining Order presented by Plaintiff preventing Defendants and Attorney Yancey from dissipating the settlement funds. (Order of Feb. 25, 2005.)

The Court scheduled a hearing on Plaintiff's Motion for Preliminary Injunction for March 7, 2005. Attorney Yancey and Defendants, however, were unable to attend the March 7, 2005, hearing. The Court consequently entered an Order extending the Temporary Restraining Order for ten days or until the Court could hold a hearing on the Motion for Preliminary Injunction, whichever was earlier. (Order of Mar. 7, 2005.)

On March 14, 2005, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction. During the March 14, 2005, hearing, the Court heard evidence and counsel for the parties presented oral argument. On that same day, the Court entered an Order deferring ruling on the Motion for Preliminary Injunction to allow counsel time to file additional briefs. (Order of Mar. 14, 2005.) The Court also extended the Temporary Restraining Order as to the following: (1) $61,120.17 of settlement proceeds deposited in Defendant Josue Carillo's account at Dalton Whitfield Bank, located at 401 South Thornton Avenue in Dalton, Georgia; (2) $32,000 of settlement proceeds remaining in Defendant Vincente Carillo's account at Dalton Whitfield Bank, located at 401 South Thornton Avenue in Dalton, Geor-

gia; and (3) a 2000 F–150 Ford truck purchased by Defendant Vincente Carillo with a portion of the settlement proceeds. (*Id.*) The March 14, 2005, Order provided that the Temporary Restraining Order would remain in place until the Court issued a decision on Plaintiff's Motion for Preliminary Injunction. (*Id.*) The Court's March 14, 2005, Order also appointed a guardian ad litem for Defendant Josue Carillo. (*Id.*)

On March 21, 2005, Defendants responded to Plaintiff's Motion for Preliminary Injunction with a Motion to Dismiss. On April 4, 2005, Plaintiff responded to Defendant's Motion to Dismiss by filing a Motion for Summary Judgment. The briefing process for Plaintiff's Motion for Preliminary Injunction, Defendants' Motion to Dismiss, and Plaintiff's Motion for Summary Judgment is complete, and the matters are ripe for resolution by the Court.

## II. Defendant's Motion to Dismiss

### A. Allegations of Plaintiff's Verified Complaint

Plaintiff's Verified Complaint states, in relevant part: "This action is to enforce the terms of the Mohawk Carpet Corporation Health and Welfare Benefits Plan (the 'Plan') ... and for equitable relief arising under" ERISA. (Verified Compl. ¶ 1.) Plaintiff is a fiduciary of the Plan. (*Id.* ¶ 2.)

Defendant Josue Carillo and Defendant Vincente Carillo reside in Chatsworth, Georgia. (Verified Compl. ¶¶ 3–4.) Defendants were covered persons under the terms of the Plan, which is self-funded. (*Id.* ¶¶ 1, 7.) The Plan is covered by ERISA. (*Id.* ¶ 1.)

On or about June 17, 2002, Defendants sustained injuries in an accident. (Verified Compl. ¶ 8.) The Plan paid medical benefits of $122,393.64 on behalf of Defendant Josue Carillo as a result of the June 17,

2002, accident. (*Id.* ¶ 9.) The Plan paid medical benefits of $3,971.09 on behalf of Defendant Vincente Carillo as a result of the June 17, 2002, accident. (*Id.* ¶ 10.)

The Plan contains a Subrogation/Right of Reimbursement provision, which states:

**ARTICLE XI–SUBROGATION RIGHT OF REIMBURSEMENT**

In the event benefits are provided to or on behalf of a Covered Person under the terms of this Plan, the Covered Person agrees, as a condition of receiving benefits under the Plan, to transfer to the Plan all rights to recover damages in full for such benefits when the injury or illness occurs through the act or omission of another person, firm, corporation, or organization.

If, however, the Covered Person receives a settlement, judgment, or other payment relating to the accidental injury or illness from another person, firm, corporation, organization, or business entity paid by, or on behalf of, the person or entity who allegedly caused the injury or illness, the Covered Person agrees to reimburse the Plan in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness. The Plan's right of recovery applies regardless of whether such payments are designated as payment for, but not limited to, pain and suffering, medical benefits, lost wages, other specified damages, or whether the Covered Person has been made whole or fully compensated for his/her injuries.

The [Plan's] right of full recovery may be from the third-party, any liability or other insurance covering the third-party, the insured's own uninsured motorist insurance, underinsured motorist insurance, any medical payments (Med–Pay), no fault, personal injury protection (PIP), malpractice, or other insurance coverages which are paid or payable.

In the event benefits are provided to or on behalf of a Covered Person under the terms of this Plan, the Plan shall be subrogated, at its expense, to the rights of recovery of such Covered Person against any person, firm, corporation, organization, and/or any insurance coverages to which the Covered Person may be entitled.

The Plan will not pay attorney's fees, costs, or other expenses associated with a claim or lawsuit without the expressed written authorization of the Plan.

The Covered Person shall not do anything to hinder the Plan's right of subrogation and/or reimbursement. The Covered Person shall cooperate with the Plan and execute all instruments and do all things necessary to protect and secure the Plan's right of subrogation and/or reimbursement, including assert a claim or lawsuit against the third-party or any insurance coverages to which the Covered Person may be entitled. Failure to cooperate with the Plan will entitle the Plan to withhold benefits due the Covered Person under the Plan Document. Failure to reimburse the Plan as required will entitle the Plan to deny future benefit payments for all Covered Persons under this policy until the subrogation/reimbursement amount has been paid in full.

(Verified Compl. ¶ 11.)

Plaintiff alleges that Defendants settled claims relating to the June 17, 2002, accident for $200,000. (Verified Compl. ¶ 12.) Plaintiff claims that although Plaintiff has requested that Defendants reimburse the Plan for $126,364.73 under the terms of the Plan, Defendants have refused to reimburse Plaintiff. (*Id.* ¶ 13.)

Plaintiff's Verified Complaint further states: "Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff seeks equitable re-

lief, including, but not limited to, restitution, imposition of a constructive trust, and equitable lien to enforce ERISA and the terms of the Plan." (Verified Compl. ¶ 17.) Plaintiff alleges: "By refusing to cooperate with the Plan to protect its rights, and refusing to reimburse the Plan to the extent of benefits paid out of the amount Defendants recovered, Defendants have violated the terms of the Plan." (*Id.* ¶ 18.) According to Plaintiff, "[s]ince these acts and/or practices violate the Plan's terms, this Court should enter an order in restitution enforcing the terms of the Plan by requiring Defendants to turn over the $126,364.73 to the Plan." (*Id.* ¶ 19.) Finally, Plaintiff's Prayer for Relief states, in relevant part: "Plaintiff requests that the Court enter an Order granting equitable restitution against Defendants requiring Defendants to reimburse Plaintiff in the amount of $126,364.73, including appropriate pre-judgment and post-judgment interest, and for any other relief to which Plaintiff is entitled, and that reasonable attorney's fees and costs be awarded, pursuant to 29 U.S.C. § 1132(a)."

## B. Standard Governing a Motion to Dismiss

■■■ The standard for a court to dismiss a claim is whether "it appears beyond doubt that the plaintiff can prove no set of facts to support his claim." *GSW, Inc. v. Long County,* 999 F.2d 1508, 1510 (11th Cir.1993) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When considering a motion to dismiss, the Court "must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs." *White v. Lemacks,* 183 F.3d 1253, 1255 (11th Cir.1999). However, "[a]s a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss."

*South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 408 n. 10 (11th Cir.1996).

## C. Discussion

Defendants contend that the Court lacks jurisdiction over Plaintiff's claim, because Plaintiff's allegations fail to state a claim for equitable relief under 29 U.S.C.A. § 1132(a)(3). 29 U.S.C.A. § 1132(a) provides, in relevant part:

(a) A civil action may be brought—

· (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C.A. § 1132(a)(3). Plaintiff has styled its cause of action as a claim for restitution, imposition of a constructive trust, or equitable lien to enforce ERISA or the terms of the Plan under 29 U.S.C.A. § 1132(a)(3)(ii). (Verified Compl. ¶ 17.)

■■■ ERISA is a " 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). The Supreme Court has stated that it is "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Great–West Life & Annuity Co. v. Knudson,* 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (quoting *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)) (alteration in original). Instead, the Supreme Court has observed

that "ERISA's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mertens,* 508 U.S. at 254, 113 S.Ct. 2063) (internal quotation marks omitted) (emphasis in original).

■ The Supreme Court has held that for purposes of 29 U.S.C.A. § 1132(a)(3), "equitable relief" must refer to "those categories of relief that were typically available in equity." *Mertens,* 508 U.S. at 256, 113 S.Ct. 2063. The Supreme Court further refined the definition of "equitable relief" in *Knudson,* 534 U.S. at 210–21, 122 S.Ct. 708.

In *Knudson,* one petitioner, Great West Life & Annuity Company, paid medical expenses relating to an automobile accident, for respondent Janette Knudson, who was a beneficiary under a health and welfare plan covered by ERISA. 534 U.S. at 207, 122 S.Ct. 708. The plan included a reimbursement provision stating that the plan would have a right to recover from a beneficiary any payment for benefits paid by the Plan that the beneficiary recovered from a third party. *Id.*

The respondents in *Knudson* ultimately filed a tort action in California against an automobile manufacturer and other alleged tortfeasors. 534 U.S. at 207, 122 S.Ct. 708. The parties to that action ultimately negotiated a settlement agreement that allocated a portion of the settlement funds to a special needs trust for the respondent's medical care. *Id.* The state court ultimately approved the settlement, and a portion of the settlement funds were paid to the special needs trust. *Id.* at 208, 122 S.Ct. 708.

The petitioners in *Knudson* eventually filed a lawsuit in federal court, seeking injunctive and declaratory relief under 29 U.S.C.A. § 1132(a)(3) to enforce the reimbursement provision of the plan and to obtain payment from the special needs trust for the benefits that the plan had paid for the respondents. *Knudson,* 534 U.S. at 208, 122 S.Ct. 708. The district court dismissed that claim, and the United States Court of Appeals for the Ninth Circuit subsequently affirmed, holding that the relief sought by the petitioners was not equitable relief, and was not authorized under § 1132(a)(3). *Id.* at 209, 122 S.Ct. 708.

The Supreme Court affirmed the Ninth Circuit's holding. *Knudson,* 534 U.S. at 221, 122 S.Ct. 708. The Supreme Court observed, "petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity." *Id.* at 210, 122 S.Ct. 708. The Court noted, "'[a] claim for money due and owing under a contract is quintessentially an action at law.'" *Id.* (quoting *Wal–Mart Stores, Inc. v. Wells,* 213 F.3d 398, 401 (7th Cir.2000)) (internal quotation marks omitted).

In *Knudson,* the Supreme Court rejected the petitioners' argument that their suit was permitted under § 1132(a)(3)(B) because they sought restitution, which they claimed was a form of equitable relief. 534 U.S. at 212, 122 S.Ct. 708. The Court noted:

[P]etitioners argue that their suit is authorized by [§ 1132(a)(3)(B)] because they seek restitution, which they characterize as a form of equitable relief. However, not all relief falling under the rubric of restitution is available in equity. In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity. Thus, "restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in

an equity case," and whether it is legal or equitable depends on "the basis for [the plaintiff's] claim" and the nature of the underlying remedies sought.

In cases in which the plaintiff "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

Here, the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the settlement of respondents' tort action—are not in respondents' possession. As the order of the state court approving the settlement makes clear, the disbursements from the settlement were paid by two checks, one made payable to the Special Needs Trust and the other to respondents' attorney (who, after deducting his own fees and costs, placed the remaining funds in a client trust account from which he tendered checks to respondents' other creditors, Great–West and Medi–Cal). The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

534 U.S. at 212–14, 122 S.Ct. 708 (citations and footnote omitted).

The majority of courts have interpreted *Knudson* as allowing claims for restitution, constructive trusts, or equitable liens based on reimbursement or subrogation provisions in ERISA plan documents to proceed under § 1132(a)(3). To determine whether a claim such as Plaintiff's claim may proceed under § 1132(a)(3), those courts ask: "Does the Plan seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant beneficiary?" *Bombardier Aerospace Employee Welfare*

*Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 356 (5th Cir.2003), *cert. denied,* 541 U.S. 1072, 124 S.Ct. 2412, 158 L.Ed.2d 981 (2004). Those courts reason that a case that meets those three criteria is distinguishable from *Knudson,* because the beneficiary in *Knudson* had no constructive control or possession over specifically identifiable funds that, in good conscience, belonged to the Plan. *Id.* at 356. Applying this theory, many courts allow claims seeking to recover funds due under restitution or subrogation provisions of ERISA plan documents, so long as the funds are specifically identifiable and are within the possession, custody, or control of the beneficiary. *Admin. Comm. of Wal–Mart Assocs. Health & Welfare Plan v. Willard,* 393 F.3d 1119, 1124–25 (10th Cir.2004); *Int'l Bhd. of Elec. Workers v. Douthitt,* 98 Fed.Appx. 306, 307–08 (5th Cir.2004); *Primax Recoveries, Inc. v. Young,* 83 Fed.Appx. 523, 524 (4th Cir. 2003); *Bombardier Aerospace Employee Welfare Benefits Plan,* 354 F.3d at 356–57; *Admin. Comm. of Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco,* 338 F.3d 680, 687–88 (7th Cir.2003), *cert. denied,* — U.S. —, 124 S.Ct. 2904, 159 L.Ed.2d 828 (2004); *B.P. Amoco Corp. v. Connell,* 320 F.Supp.2d 1368, 1370–72 (M.D.Ga.2004); *Mank v. Green,* 323 F.Supp.2d 115, 121–24 (D.Me.2004); *Reynolds v. S. Cent. Reg'l Laborers Health & Welfare Fund,* 306 F.Supp.2d 646, 651–52 (W.D.La.2004); *Brush Wellman, Inc. v. Montes,* 295 F.Supp.2d 785, 790–92 (N.D.Ohio 2003); *Sealy, Inc. v. Nationwide Mut. Ins. Co.,* 286 F.Supp.2d 625, 632 (M.D.N.C.2003); *Givens v. Wal–Mart Stores, Inc.,* 327 F.Supp.2d 1057, 1061–62 (D.Neb.2003); *Primax Recoveries, Inc. v. Lee,* 260 F.Supp.2d 43, 48 (D.D.C.2003); *Wellmark, Inc. v. Deguara,* 257 F.Supp.2d 1209, 1216 (S.D.Iowa 2003); *Forsling v. J.J. Keller & Assocs., Inc.,* 241 F.Supp.2d 915, 918–19 (E.D.Wis.2003); *Bauer v. Gylten,* Nos. A3–00–161, A3–03–27, 2002 WL 664034, at *3–4 (D.N.D. Apr. 22, 2002); *Great–West Life & Annuity Ins. Co. v. Brown,* 192 F.Supp.2d 1376, 1380–81 (M.D.Ga.2002).

 The United States Court of Appeals for the Ninth Circuit and the United States Court of Appeals for the Sixth Circuit, however, have refused to allow claims to enforce restitution or subrogation provisions in ERISA plan documents to proceed under § 1132(a)(3)—regardless of whether the relief sought is nominally styled as an equitable claim, and regardless of whether the funds sought are specifically identifiable and are in the possession, custody, or control of the beneficiary. *Providence Health Plan v. McDowell,* 385 F.3d 1168, 1174 (9th Cir.2004), *cert. denied,* — U.S. —, 125 S.Ct. 1726, 161 L.Ed.2d 602, 73 U.S.L.W. 3401 (2004); *Carpenters Health & Welfare Trust for S. Cal. v. Vonderharr,* 384 F.3d 667, 670–73 (9th Cir.2004), *pet'n for cert. filed,* No. 04–1049, 73 U.S.L.W. 3466 (Jan. 31, 2005), *Qualchoice, Inc. v. Rowland,* 367 F.3d 638, 648–50 (6th Cir. 2004), *cert. denied,* — U.S. —, 125 S.Ct. 1639, 161 L.Ed.2d 510 (2005); *Cmty. Health Plan of Ohio v. Mosser,* 347 F.3d 619, 623–24 (6th Cir.2003); *Cmty. Ins. Co. v. Morgan,* 54 Fed.Appx. 828, 831–33 (6th Cir.2002); *Great–West Life & Annuity Ins. Co. v. Berlin,* 45 Fed.Appx. 750, 750 (9th Cir.2002); *Westaff (USA), Inc. v. Arce,* 298 F.3d 1164, 1166–67 (9th Cir. 2002), *cert. denied,* 537 U.S. 1111, 123 S.Ct. 901, 154 L.Ed.2d 784 (2003); *Unicare Life & Health Ins. Co. v. Saiter,* 37 Fed.Appx. 171, 172–73 (6th Cir.2002) (per curiam). Those courts reason that in *Knudson,* the Supreme Court drew "a 'fine distinction' between those actions that are truly legal in nature and those that constitute allowable 'appropriate equitable relief' under ERISA, regardless of the label attached to the claim." *Vonderharr,* 384 F.3d at 671

(quoting *Knudson,* 534 U.S. at 214–15, 122 S.Ct. 708). Consequently, those courts require that a party seeking to state an action under § 1132(a)(3) " 'demonstrate (1) that it is an ERISA fiduciary, and (2) that it is seeking equitable, rather than legal, relief.' " *Id.* at 672 (quoting *Reynolds Metals Co. v. Ellis,* 202 F.3d 1246, 1249 (9th Cir.2000)). To determine whether a party seeks equitable relief, those courts "look to the 'substance of the remedy sought … rather than the label placed on that remedy.' " *Arce,* 298 F.3d at 1166 (quoting *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1528 n. 5 (9th Cir.1993)).

The courts disallowing claims to enforce reimbursement or subrogation provisions under § 1132(a)(3) reason that those claims essentially are "seeking to enforce a contractual obligation for the payment of money, a classic action at law and not an equitable claim." *Arce,* 298 F.3d at 1166. Those courts recognize that although the claims may be nominally styled as equitable claims, what the claims " 'in fact seek is nothing other than compensatory damages—monetary relief for all losses [the plaintiffs] suffered as a result of the alleged breach[es]' of the reimbursement provision[s]." *Id.* (quoting *FMC Med. Plan v. Owens,* 122 F.3d 1258, 1261 (9th Cir.1997)). Consequently, those courts have found that actions asserted by ERISA plans or plan fiduciaries to enforce restitution or subrogation provisions under § 1132(a)(3) are not equitable claims, but instead are "nothing more than garden-variety legal claims for contractual restitution that are not cognizable under ERISA." *Vonderharr,* 384 F.3d at 673.

The United States Court of Appeals for the Eleventh Circuit has not yet taken a position on this issue. Although the Eleventh Circuit indicated in *Blue Cross and Blue Shield of Alabama v. Sanders,* 138 F.3d 1347 (1998), that specific performance of a reimbursement provision was appropriate equitable relief under § 1132(a)(3)(B), that decision predates *Knudson.* 138 F.3d at 1353 n. 5. Given that the Eleventh Circuit has recognized that *Knudson*'s interpretation of "appropriate equitable relief" for purposes of § 1132(a)(3)(B) "was more narrow than the interpretations found in previous decisions by the circuit courts of appeals," the Court concludes that the Eleventh Circuit would not follow its statement in *Sanders,* but instead would re-evaluate its position in light of *Knudson. Flint v. ABB, Inc.,* 337 F.3d 1326, 1330–31 (11th Cir.2003), *cert. denied,* 540 U.S. 1219, 124 S.Ct. 1507, 158 L.Ed.2d 153 (2004).

█ The Court finds that the reasoning of the Ninth and Sixth Circuits is persuasive and is consistent with *Knudson*'s directive to consider the type of relief actually sought, rather than the label placed on that relief. *See Flint,* 337 F.3d at 1331 (noting that in *Knudson,* the Supreme Court "instructed that, in determining whether relief is legal or equitable in a particular case (and hence whether it is authorized by § [1132(a)(3) ]) remains dependent on the nature of the relief sought"). The Court therefore follows the approach taken by the Ninth and Sixth Circuits.[1] Consequently, the Court concludes that Plaintiff's claim, regardless of whether it is styled as a claim for a constructive trust, for equitable restitution, or

---

1. The Court finds unpersuasive Plaintiff's argument that *Harris Trust v. Salomon Brothers,* 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), "closes the loop on the error in this argument pressed by Defendants that has been accepted by the Sixth and Ninth Circuits, but rejected by the Fourth, Fifth, Seventh, Eighth, and Tenth Circuits." (Pl.'s Reply Br. Supp. Mot. Summ. J. at 3–4 (footnote omitted)).

for an equitable lien, simply seeks to enforce a provision of a plan document that would require Defendants to pay money. *McDowell*, 385 F.3d at 1174. Such a claim is not equitable in nature, and is not "appropriate equitable relief" for purposes of § 1132(a)(3). *Id.*

Even if the Court had followed the majority approach, however, the Court still would conclude that Plaintiff has failed to state a claim for relief under § 1132(a)(3). Plaintiff does not seek recovery of specified, identifiable funds, but instead seeks recovery of funds that have been comingled into various checking accounts and spent, in part, to purchase a truck. Under those circumstances, relief under § 1132(a)(3) is unavailable. *See Popowski v. Parrott*, Civil Action File No. 1:04–CV–0889–JOF (N.D.Ga. Dec. 22, 2004), slip op. at 10–11 (unpublished) (observing that settlement proceeds received by defendant and placed directly into checking or savings account, rather than segregated into identifiable amount or location, were not specifically identifiable for purposes of § 1132(a)(3)).

For the reasons discussed above, the Court finds that Plaintiff's Verified Complaint fails to state a claim for relief under § 1132(a)(3). Consequently, the Court grants Defendants' Motion to Dismiss.

## III. Motion for Preliminary Injunction

Plaintiff also has filed a Motion for Preliminary Injunction. Plaintiff seeks a preliminary injunction under either § 1132(a)(3) or under traditional equitable rules.

### A. Section 1132(a)(3)

For the reasons discussed *supra* Part II.C., Plaintiff has failed to state a claim for relief under § 1132(a)(3). Plaintiff consequently cannot obtain a preliminary injunction under § 1132(a)(3).

### B. Traditional Standard for a Preliminary Injunction

To obtain a preliminary injunction, a movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) the preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the preliminary injunction would inflict on the non-movant; and (4) the preliminary injunction would serve the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). In the Eleventh Circuit, " '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion' as to the four requisites." *Id.* (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)) (internal quotation marks omitted) (alterations in original).

For the reasons discussed supra Part II.C., Plaintiff cannot obtain relief under § 1132(a)(3). Plaintiff consequently cannot demonstrate that it has a substantial likelihood of success on the merits.[2] Because Plaintiff cannot show a substantial likelihood of success on the merits, the Court denies Plaintiff's Motion for Preliminary Injunction.

---

**2.** Plaintiff appears to argue that the Court should find that Plaintiff has a substantial likelihood of success on the merits simply because the February 25, 2005, Order granting Plaintiff's Motion for Temporary Restraining Order indicated that Plaintiff likely could prevail. The Court observes that the February 25, 2005, Order was an *ex parte* Order prepared by Plaintiff's counsel and approved by the Court, and that the February 25, 2005, Order is not a final order. The Court remains free to change its mind as to whether Plaintiff is likely to succeed on the merits.

## IV. Plaintiff's Motion for Summary Judgment

Plaintiff responded to Defendants' Motion to Dismiss with a Motion for Summary Judgment. In the interest of efficiency, the Court will proceed to address that Motion.

### A. Background

Keeping in mind that when deciding a motion for summary judgment, the Court "must view the evidence and all factual inferences in the light most favorable to the party opposing the motion," the Court provides the following statement of facts. *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993). This statement does not represent actual findings of fact; rather, it is intended simply to place the Court's legal analysis within the context of a specific case or controversy. *Swint v. City of Wadley*, 51 F.3d 988, 992 (11th Cir.1995) ("[W]hat we state as 'facts' in this [order] for purposes of reviewing the ruling[ ] on the summary judgment motion[ ] may not be the actual facts. They are, however, the facts for present purposes, and we set them out below.").

The Court incorporates the allegations of Plaintiff's Complaint set forth *supra* Part II.B. as the background statement of facts for purposes of evaluating Plaintiff's Motion for Summary Judgment.

### B. Standard Governing a Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact. *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1246 (11th Cir.1999).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog*, 193 F.3d at 1246 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The party requesting summary judgment " 'always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1281 (11th Cir.1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (internal quotation marks omitted). "The movant[ ] can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." *Id.* at 1281–82. "There is no requirement, however, 'that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.' " *Id.* at 1282 (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Graham*, 193 F.3d at 1282; *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party "need not present evi-

dence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Graham,* 193 F.3d at 1282.

After the non-moving party properly has responded to a proper motion for summary judgment, the Court may grant the motion for summary judgment if the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 819 (11th Cir.1999). When making this determination, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Hinson v. Edmond,* 192 F.3d 1342, 1348 (11th Cir.1999); *St. Charles Foods, Inc.,* 198 F.3d at 819. The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *St. Charles Foods, Inc.,* 198 F.3d at 819 (quoting *United of Omaha Life Ins. v. Sun Life Ins. Co.,* 894 F.2d 1555 (11th Cir.1990)). Additionally, " '[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.' " *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296–97 (11th Cir.1983)) (alteration in original). Moreover, "credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." *Graham,* 193 F.3d at 1282. Finally, "[i]f the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Herzog,* 193 F.3d at 1246.

■ When considering motions for summary judgment, the Court does not make decisions as to the merits of disputed factual issues. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ryder v. Int'l Corp. v. First Am. Nat'l Bank,* 943 F.2d

1521, 1523 (11th Cir.1991). Rather, the Court only determines whether genuine issues of material fact exist to be tried. *Graham,* 193 F.3d at 1282. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Id.* Disputed facts that do not resolve or affect the outcome of a suit properly will not preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

■ In addition to materiality, the Court also must consider the genuineness of the alleged dispute. *Graham,* 193 F.3d at 1282. A dispute is genuine if " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The non-movant " 'must do more than show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The standard for summary judgment thus mirrors the "standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Graham,* 193 F.3d at 1283 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

## C. Discussion

For the reasons discussed *supra* Part II.C., the Court finds that Plaintiff's claims under § 1132(a)(3) fail as a matter of law. The Court therefore cannot find that no genuine dispute exists concerning whether

Plaintiff can prevail on its claims. The Court consequently denies Plaintiff's Motion for Summary Judgment.

## V. Conclusion

ACCORDINGLY, the Court **DENIES** Plaintiff's Motion for a Preliminary Injunction [4]. The Court **GRANTS** Defendants' Motion to Dismiss [16], and **DENIES** Plaintiff's Motion for Summary Judgment [17]. Because Plaintiff simply has attempted to assert claims arising under 29 U.S.C.A. § 1132(a)(3) and ERISA, and has not alleged or otherwise demonstrated that diversity jurisdiction exists, the Court **DISMISSES** Plaintiff's Complaint **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to **CLOSE** this case.